# "Exhibit '1'"

FILED
MARIE RAMSEY - HIRST COURT CLERK
CANADIAN COUNTY OKLA.

OCT 29 2015

BY _____
DEPUTY

**IN THE DISTRICT COURT OF CANADIAN COUNTY**
**STATE OF OKLAHOMA**

(1) SHEPPARD & SONS CONSTRUCTION, INC.,

    Plaintiff,

v.

(1) ESSEX INSURANCE COMPANY,

    Defendant.

Case No. CJ-15-621

CASE ASSIGNED TO:

JUDGE: GARY E. MILLER

**PETITION**

Sheppard & Sons Construction, Inc. ("Sheppard"), for its cause of action against Essex Insurance Company ("Essex") states as follows:

1. Sheppard is a resident of Canadian County, Oklahoma. Essex is a foreign insurance company doing business in Oklahoma. By this action, Sheppard seeks money damages in excess of $75,000.00. This Court has jurisdiction herein and venue is proper.

2. At all times relevant hereto, Essex was Sheppard's liability insurance carrier.

3. A lawsuit was filed by The Dental Lodge, PLC, in the District Court of Cleveland County, Oklahoma captioned *The Dental Lodge, PLC v. Sheppard & Sons Construction, Inc., d/b/a Sheppard & Sons Homes, et al., Case No. CJ-2013-1236-L* filed on September 30, 2013. (The "State Court Action"). In this action, The Dental Lodge, PLC, alleges claims against Sheppard, C & D Dozer Services, L.L.C, John Scott, Inc. and Sooner Okie Irrigation L.L.C arising from their alleged negligent workmanship with respect to the construction of a commercial dental office located at 1009 Parkwoods Drive, Noble, Cleveland County, Oklahoma ("The Facility"). The Dental Lodge, PLC, alleges that it is incurred damages in excess of $75,000.00.

4.     By order dated July 9, 2015 entered by United States District Judge Timothy D. DeGiusti in case number CIV-12-1022 D it was confirmed that the filing of the State Court Action triggered Essex's duty to defend Sheppard in the State Court Action.

5.     On November 12, 2013, Sheppard, by correspondence with attorneys for Essex Insurance Company, timely tendered its defense to Essex and demanded independent counsel to protect its interest in the face of serious conflict of interest evidenced by Essex's position in this declaratory action. Following service of the lawsuit on Sheppard, by letter dated November 26, 2013, Sheppard again tendered its defense to Essex and demanded Essex fulfill its duty to defend Sheppard by allowing Sheppard to retain independent counsel at Essex's expense.

6.     On January 7, 2014, Essex ostensibly accepted the tender to defend under reservation of rights; however, Essex conditioned its acceptance on Sheppard's agreement to cap its defense counsel's hourly fee without regard to what might then prevail as a reasonable hourly fee, and second, that Sheppard agree to pay half of the cost of defense.

7.     The conditions imposed by Essex to its purported acceptance of Sheppard's request for defense by way of independent counsel amount to a rejection of Sheppard's request.

8.     By such rejection of Sheppard's tender of defense Essex has failed and refused to defend Sheppard in the underlying state court action. As a result, Sheppard has been forced to defend itself and has incurred fees and expenses as a result.

9.     By the January 7, 2014 letter, Essex acknowledges it may have a duty to indemnify Sheppard under its policy. On January 20, 2014, Essex by pleading filed in Case No. CIV-12-1022D acknowledged that it "may have duties to defend and/or indemnify Sheppard in the State Court Action." Further, it states, "Essex could potentially be required to pay all sums up to its applicable policy limits under one or more policies if Sheppard is liable for covered

damages in the State Court Action." This pleading admission coupled with Essex's counsel's statement in his January 7, 2014 letter show Essex to acknowledge that Essex cannot rule out a possibility of coverage of the claims urged against Sheppard in the underlying state court action. This fact clearly triggered Essex's contractual duty to defend Sheppard in that action. By rejecting Sheppard's tender of defense, Essex has and continues at present to breach its duty under its policies. Under these circumstances it proceeds in bad faith.

10.     Plaintiff's breach of its duty to defend Sheppard has directly resulted in injury to Sheppard, as it is compelled to provide and pay for its own defense in the underlying action.

11.     Under the terms of the Essex policies, Sheppard was obligated to cooperate in Essex's investigation of the claim and provide frank and truthful information to Essex when so requested.

12.     At Essex's request, in June 2012, Sheppard was questioned at length by Essex representatives, providing full and frank disclosure of facts known to Sheppard concerning causation of the damage to the building and Sheppard's role in the matter.

13.     The information Sheppard supplied to Essex was supplied in confidence with a reasonable expectation on the part of Sheppard that the information would be kept confidential and would not be used by Essex to harm Sheppard in relation to the Dental Lodge's then pending claim of liability and threat of suit against Sheppard.

14.     In addition to its interview of Sheppard, Essex undertook a forensic-engineering investigation into the cause of the problem with the Dental Lodge building. A forensic report was drafted for Essex's use on August 10, 2012. In addition to third-party engineering analysis, the report contains a section entitled, "Insured's Testimony," and included statements disclosed

in confidence by Sheppard to Essex as part of Sheppard's contractually mandated duty of cooperation.

15. **On September 12, 2012, two days after Essex had concluded there was no coverage for the damage to the Dental Lodge's building, Essex provided Blake Sonne, attorney for the Dental Lodge, with a copy of the forensic report including Sheppard's confidential disclosures made to Essex. This was done without Sheppard's knowledge or approval. Although a copy of any such report was requested by both Sheppard and its attorney, neither received a copy from Essex until March 3, 2014.**

16. At the time Essex volunteered to provide the Dental Lodge its forensic report, Essex knew that the Dental Lodge and Sheppard were adverse to one another, with the Dental Lodge claiming Sheppard to be liable for the damage to its building and threatening suit against Sheppard on such claim. Essex intentionally supplied the report to the Dental Lodge. There was no mistake or accident in doing so.

17. By providing the Dental Lodge's attorney with its forensic report in September 2012, Essex intentionally provided information helpful to the Dental Lodge in pursuing its claim against Sheppard, including Sheppard's confidential disclosures. Essex in effect provided Sheppard's adversary with a blueprint for pleading its suit against Sheppard. In doing so, Essex knew or should have known the likely result of this to be to harm Sheppard, not only by aiding its adversary in pleading and pursuing its claim against Sheppard in the underlying state court action, but also by encouraging the Dental Lodge attorney to plead his lawsuit against Sheppard so as to cause it to fall outside the scope of coverage under the Essex policies. Were this to occur, this would not only harm Sheppard, it would aid Essex by relieving

it of its financial risk under its policies. Essex knew all of this when it made the decision to voluntarily share the report with the Dental Lodge and its attorney on September 12, 2012.

18. By volunteering to supply the Dental Lodge with the forensic report and Sheppard's disclosures on September 12, 2012, Essex has harmed Sheppard by handing the Dental Lodge its case against Sheppard. It was done at a crucial early date when neither Sheppard nor Essex was under compulsion to supply the information. It was provided at no expense to the Dental Lodge. It has increased Sheppard's difficulty in managing the financial risk posed by the Dental Lodge claim, and has decreased Sheppard's chance for a successful outcome in the underlying state court action.

19. As Sheppard's liability insurance carrier, Essex owes Sheppard the duty of honesty, good faith and fair dealing. In effect, Sheppard was entitled to view Essex as its fiduciary. Sheppard was entitled to Essex's honest review of the issue of coverage with a view towards confirming the existence or absence of coverage as soon as reasonably possible to aid Sheppard in managing its financial/legal risks. Sheppard was reasonably entitled to assume, and did assume, that Essex would comply with these duties when Sheppard gave notice of the Dental Lodge claim and cooperated, in confidence, with Essex as it investigated coverage. Essex knew or should have known this to be the case. During this process Sheppard was entitled to Essex's loyalty in terms of protecting Sheppard's confidential information and in the avoidance of actions reasonably calculated to aid and abet those asserting adverse claims against Sheppard. Sheppard entrusted Essex to serve as its shield. Essex breached this trust by loaning itself to The Dental Lodge to be used as a spear against Sheppard. In doing so Essex breached its obligations owed Sheppard under the Essex policies. It did so without justification and in breach of its duty

to deal with Sheppard in good faith. Under these circumstances, Essex should be estopped from denying coverage of the Dental Lodge's claim.

20. Through the litigation instigated by Essex as Case No. CIV-12-1022D, Essex has asserted mutually inconsistent positions designed to frustrate and delay the claims handling process and to provide it a platform to shift litigation of issues rightfully litigated in the underlying action into this action. Essex's conduct in this regard has shifted Essex's financial obligation to defend Sheppard from Essex to Sheppard.

21. When Essex filed Case No. CIV-12-1022D seeking declaratory relief it had already satisfied itself there was no possibility of coverage. Rather than formally denying coverage (as is its duty if so convinced) Essex initiated the present action claiming the need for confirmation of its conclusion. When Essex filed its Second Amended Complaint in Case No. CIV-12-1022D on January 20, 2014, it reversed course and alleged that a possibility of coverage does exist. This is obviously is inconsistent with its pre-filing in-house conclusion and the allegations made in its original Complaint and its First Amended Complaint.

22. Essex's litigation tactic of sitting on the fence with mutually inconsistent positions is inconsistent with and in breach of Essex's duty to promptly investigate the claim and to promptly announce its honest conclusion of either confirming coverage, denying coverage, or acknowledging it cannot make the determination exposing it to a defense under reservation. By attempting to elect each of these positions Essex has breached its obligations to Sheppard under the policies to reasonably investigate and honestly and timely report its stance as to coverage.

23. Essex's handling of the matter is a tactic calculated to shift the financial burden inherent in the defense of Sheppard in the State Court Action from Essex to Sheppard. Essex does this by initiating and maintaining Case No. CIV-12-1022D, by joining as parties to this

action all parties to the underlying State Court Action, and then by relying on the parties' necessary race to *res judicata* in this action. It will force Sheppard to effectively pay for its defense of the underlying claim as it is forced to litigate these matters in the present action. Essex is effectively forcing its insured to perform Essex's obligation. Essex is forcing its insured to litigate to secure coverage. This action is contrary to Essex's duties under its policies and is inconsistent with good faith claim handling.

24. By engaging in this litigation technique, Essex has harmed Sheppard by causing Sheppard to effectively absorb the cost of defense of the State Court Action.

25. Essex is obliged by the Essex policies and by legal implication to treat Sheppard honestly, fairly and to act in good faith as it discharges its duties to conduct a timely investigation of the Dental Lodge claim, to timely and honestly report its position on coverage to Sheppard, to refrain from aiding the Dental Lodge as it pursues its claim against Sheppard, to avoid voluntary disclosure to the Dental Lodge of confidential information acquired by Essex from Sheppard, its insured, while investigating the claim, to provide cost of defense of Sheppard against the Dental Lodge claim where, as is the case here, Essex cannot rule out the possibility of its duty to indemnify Sheppard, and finally, to refrain from forcing Sheppard to litigate for coverage. Essex has breached each of these obligations including its duty of good faith.

26. Essex's breach of obligation as described above has injured Sheppard. Among other injuries, it has caused Sheppard to unnecessarily incur legal expenses. It has injured Sheppard's reputation in the business community. It has cost Sheppard valuable job opportunities. It has taken Sheppard's employees away from income-producing work and has greatly increased the cost to Sheppard of maintaining insurance.

27.   Essex's aforementioned conduct was and continues to be intentional having been undertaken with malice and full knowledge of the injury and harm that Sheppard would be caused to suffer. As such Essex should be held liable for punitive damages in an amount sufficient to make example of and to deter similar conduct in the future.

WHEREFORE, Sheppard prays for money damages, both compensatory and punitive as judgment against Essex. Sheppard seeks the Court's Order holding Essex to be estopped from denying coverage of Sheppard to the full extent of its policy limits with respect to claims urged against Sheppard in the State Court Action. Sheppard also seeks an award of costs, including reasonable attorney's fees to the extent allowed by law.

Respectfully submitted,

_____
Mark R. McPhail, OBA#15307
SPRADLING, KENNEDY & McPHAIL, L.L.P.
The Tower, Suite 1750
1601 NW Expressway
Oklahoma City, OK 73118
Telephone: (405) 418-2700
Facsimile: (405) 418-2705
mrmcphail@spradlinglaw.com
**ATTORNEY FOR PLAINTIFF,**
**SHEPPARD & SONS CONSTRUCTION, INC.**